## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOSEPH DOMINICK, ET AL.** | \* | **CIVIL ACTION** |
| | \* | |
| **versus** | \* | **No. 12-465** |
| | \* | |
| **STATE FARM MUTUAL AUTOMOBILE** | \* | **SECTION "L" (5)** |
| **INSURANCE COMPANY** | \* | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. PROCEDURAL HISTORY

This case involves a claim under an insurance policy for losses resulting from the alleged theft of a 2002 Ford Thunderbird owned by Plaintiffs Joseph Dominick and Diana Dominick. The incident occurred on October 14, 2010 while the car was parked on the street in New Orleans near the French Market. Plaintiffs reported the incident to their insurer, the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") and in due course made a claim for damages resulting from theft of the vehicle. On March 25, 2011, State Farm denied Plaintiff's claim. On January 23, 2012, Plaintiff filed suit against State Farm in the Civil District Court for the Parish of Orleans seeking damages for breach of contract and penalties, including costs and attorneys fees, for arbitrarily and capriciously denying the claim. On February 20, 2012, State Farm removed the case to this court and filed an answer denying liability and claiming, in essence, that the policy did not cover the loss. After considerable discovery the Court granted Defendant's motion for summary judgment dismissing Plaintiffs' claim for punitive damages. The only claim remaining is for breach of contract.

The case came on for trial before the Court without a jury.  After a consideration of the testimony and exhibits, the Court makes the following findings of fact and conclusions of law. To the extent that a finding of fact constitutes a conclusion of law the court adopts it as such, and to the extent that a conclusion of law constitutes a finding of fact the court adopts it as such.

## II. FINDINGS OF FACT

### (1)

The Plaintiff, Joseph Dominick, was the registered owner of a 2002 Thunderbird bearing vin number 1FAHP6OA52Y122504.  He resides with his wife, Diana Dominick, at 46224 Morris Road, Hammond, LA 70401.

### (2)

On October 14, 2010, Plaintiff Diana Dominick drove the car to New Orleans intending to meet her daughter and shop in the French Quarter.  She arrived in New Orleans around 3:30 p.m. and parked the car on the street at North Peters and Barracks and met her daughter and proceeded to shop.  When she returned to the place where she parked the car, it was gone.  After checking with the impound lots to no avail she contacted the New Orleans Police Department and reported the car missing or stolen.  The car has never been found.

### (3)

The 2002 Thunderbird was insured by Defendant, State Farm, under policy number 16 8008-E24-18H.  Defendant State Farm is a foreign insurer duly organized under the laws of the State of Illinois with its principle place of business in Illinois.  The Plaintiffs reported the theft of the vehicle to State Farm on October 15, 2010 and made a claim under the comprehensive loss provision of the policy.  Under this provision State Farm agreed to pay for loss (except loss

caused by collision) to the covered vehicle.

(4)

The State Farm policy defines various terms:

Insured means "you and resident relatives."

Loss means "total or partial theft of a covered vehicle."

(5)

The State Farm policy also contains several exclusions:

"There is no coverage for:

1. Any covered vehicle that is

a. Intentionally damaged or

b. Stolen by or at the direction of the insured...

4. Any covered vehicle due to theft... by an insured, consignee, an agent of a consignee or a person who obtains possession of the covered vehicles with the permission of a consignee or agent of a consignee."

The State Farm policy also contains an exclusion for concealment or fraud:

"11. Concealment or Fraud

There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstances in connection with any claim under this policy."

(6)

After the Plaintiffs filed their claim, State Farm conducted an investigation.  During the

investigation, Plaintiffs provided State Farm with a copy of their bank records.  The records show that during the months preceding the incident (April 2010 – September 2010) Plaintiffs incurred several overdraft fees and fees due to insufficient funds.  At the beginning of this period, the fees to date were $124.  By September 2010, Plaintiffs incurred $403 worth of fees for overdrawn accounts or insufficient funds.

(7)

State Farm's investigation also revealed that Plaintiffs owed money on two Home Shopping Network ("HSN") credit cards.  In October 2010, the card in Joseph Dominick's name was $0 past due and had a balance of $785.72.  By April 2011, the credit card was $302.00 past due and the new balance was $1,240.69.  Each month from November 2010 to April 2011 Plaintiffs incurred a late fee for this card.

(8)

Similarly, Plaintiffs owed money on Diana Dominick's HSN credit card.  In September 2010, Plaintiffs were $59.00 past due with a balance of $1,322.84.  By February 2011, Plaintiffs were $421.00 past due with a balance of $1,657.13.

(9)

State Farm's investigation also revealed that Plaintiffs had a Line of Credit with Hancock Bank.  In September 2010, this line of credit reached $9,944.90.  In October 2010, Plaintiffs made a payment bringing the total down to $9,646.56.  In November 2010, Plaintiffs drew on the line of credit again, bringing their total debt back up to $9,957.17.

(10)

State Farm's examination of the Plaintiffs' bank records revealed that Plaintiffs spent a

4

significant amount of money at casinos.  In 2010 alone, the Plaintiffs spent $20,222 at various casinos in the area.  Specifically, in the four months surrounding the disappearance of their vehicle, the Plaintiffs spent $13,702.00 at various casinos.

(11)

On the other hand, it is uncontested that at the time of the incident, as well as presently, the Plaintiffs owned a large piece of land, approximately ten acres, as well as a house.  Plaintiffs estimate this property to be worth $400,000.  Plaintiffs also own two additional cars—a Ford Expedition and a Ford F150.  Plaintiffs have no mortgage on their house or their Expedition. Plaintiffs do have a mortgage on their F150, but they are current on all payments.

(12)

State Farm hired an expert forensic locksmith, Herbert Miller, to examine Plaintiffs' keys to the 2002 Thunderbird.  Mr. Miller's examination revealed that one of the keys had been used to make a duplicate copy.  The original key was not used again to start the vehicle after the copy was made.  Plaintiffs deny having any knowledge of a third key.  Mr. Miller was unable to determine who made the duplicate key or whether the duplicate was used to drive the car on the date of the alleged theft.  He testified that it is possible that the car was towed from its spot.

(13)

After their investigation, State Farm concluded that it was unlikely that a covered loss occurred and on March 25, 2011 denied the Plaintiffs' claim.  In essence, State Farm claims that the 2002 Thunderbird was stolen by or at the direction of the Plaintiffs.  State Farm also claims that Plaintiffs made false statements during the course of its investigation with the intent to conceal or misrepresent material facts or circumstances.

(14)

Plaintiffs filed suit against State Farm for damages resulting from breach of contract including monetary damages, inconvenience, mental duress and loss of use.  Plaintiffs also asked for punitive damages, costs, and attorneys fees under Sections 22:1220 and 22:1892 of the Louisiana Revised Statutes for arbitrarily and capriciously denying the plaintiffs' claim.  After extensive discovery State Farm filed a Motion for Summary Judgment dismissing the bad faith or punitive damage claims.  The motion was granted.  Thus the only claim remaining is the breach of contract claim.

## III. CONCLUSIONS OF LAW

(1)

On February 20, 2012, State Farm removed the case to this Court.  Plaintiffs did not object to this Court's jurisdiction at that time.  Plaintiffs did not file a Motion to Remand nor did they raise any objections during the scheduling conference, status conferences, or pretrial conference.  On August 8, 2013, the parties submitted a Joint Pre-Trial Order in which both parties stipulated to jurisdiction, stating that "[t]he parties agree that under existing jurisprudence, jurisdiction is proper with this Honorable Court."  (Rec. Doc. 41).  Five days before trial, on August 21, 2013, Plaintiffs filed a motion to remand for lack of jurisdiction. (Rec. Doc. 47).

Federal Courts are courts of limited jurisdiction.  "A party may neither consent to nor waive federal subject matter jurisdiction."  *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).  28 U.S.C.A. § 1332(a)(1) provides that district courts have original jurisdiction

over matters involving citizens of different states if the amount in controversy exceeds $75,000.
In this case, the domicile of the parties is not in dispute.  The Plaintiffs are domiciled in
Louisiana while State Farm is incorporated in Illinois with its principal place of business in
Illinois.  The only jurisdictional issue is whether the amount in controversy exceeds $75,000.

Generally, the amount in controversy requirement will be met if the plaintiff, in good
faith, claims a sum greater than the jurisdictional requirement.  *See St. Paul Reinsurance Co. Ltd.
v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  However, Plaintiffs in Louisiana state courts
may not specify the value of the damage claimed.  La.Code Civ. Proc. Ann. art. 893.  When a
complaint does not specify an amount in controversy, this Court must follow the framework
developed by the Fifth Circuit for resolving these disputes.  *See Luckett v. Delta Airlines, Inc.*,
171 F.3d 295, 298 (5th Cir. 1999).  In such a case, "the party invoking federal jurisdiction must
prove by a preponderance of the evidence that the amount in controversy exceeds the
jurisdictional amount."  *St. Paul Reinsurance*, 134 F.3d at 1253 (citing *Allen v. R & H Oil & Gas
Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).  "The district court must first examine the complaint to
determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount."  *Id.*
at 1253 (quoting *Allen*, 63 F.3d at 1336).  If it is not facially apparent from the complaint that the
claims exceed $75,000, the court should look to "'summary judgment-type' evidence to ascertain
the amount in controversy."  *Id.* (quoting *Allen*, 63 F.3d at 1336).  The amount in controversy
should be determined at the time of the filing, without regard to any subsequent developments
that may change the original amount.  *See id.* at 1253.

In the present case, Plaintiffs did not allege a specific amount of damages in the
Complaint.  Plaintiffs sought to recover "the value of their insured 2002 Ford

Thunderbird...statutory penalties for additional damages for the inconvenience, mental stress and monetary losses which they suffered...and legal fees and court costs pursuant to Louisiana Revised Statutes 22:1220 and Louisiana Revised Statutes 22:1892." (Rec. Doc. 1). Because it is not "facially apparent" that these claims exceed the jurisdictional amount, this Court turns to summary-judgment type evidence that existed at the time of removal. *See Allen*, 63 F.3d at 1335.

According to Plaintiffs' Affidavit of Vehicle Theft, which was completed on October 25, 2010, the car was more valuable than an average 2002 Thunderbird because it had atypically low mileage. Plaintiffs estimated that the car had only 58,000 miles on it, was in "excellent" condition, and was worth $18,275.00. Using Plaintiffs' mileage and value estimation, the State Farm policy would have provided for a payment of $19,919.75 for the automobile, taxes, and fees. (Rec. Doc. 51-2).

In addition to the value of the property, Plaintiffs sought recovery for "inconvenience, monetary loss, and mental stress due to their loss of use of the vehicle and inability to be assured that they would be compensated for the loss of their vehicle." Plaintiffs did not provide evidence regarding the extent of these damages at trial. However, damage awards in similar cases help guide this Court's analysis for purposes of assessing jurisdictional amount at the time of removal.

In *Orellana v. Louisiana Citizens*, the Louisiana trial court awarded the plaintiff $87,500 for damage to his home under an insurance contract. *See* 972 So. 2d 1252 (La. App. 4 Cir. 12/5/07). The trial court awarded an additional $125,000 for plaintiff's "mental anguish, stress, and inconvenience sustained as a result of [the insurance company's] bad faith failure to properly

and timely adjust this claim." *Id.* at 1253.  The Louisiana Fourth Circuit affirmed this award, finding that it was within the discretion of the fact finder to fix such a damage award.  *Id.* at 1256.

Similarly, in *Dickerson v. Lexington Ins. Co.*, the trial court awarded Plaintiff $25,000 in general damages for mental anguish suffered as a result of the insurance company's arbitrary refusal to pay for the damage to his home.  *See* 556 F.3d 290, 304 (5th Cir. 2009).  In *Farber v. American Nat. Property & Cas. Co.*, a jury awarded the plaintiffs $158,704.34 under the insurance policy and an additional $75,000 in compensatory damages resulting from the insurance company's breach of duty.  *See* 999 So. 2d 328, 331 (La. App. 3 Cir. 12/10/08). Additionally, in *Matt v. Agro Distribution, LLC*, the Louisiana Third Circuit affirmed a jury award of $125,000 to a family of farmers for "mental anguish, anxiety, and distress" caused by a decreased corn yield.  *See* 904 So. 2d 928, 932 (La. App. 3 Cir. 6/1/05).  The court found that the plaintiffs offered sufficient proof of increased stress, irritability, and short tempers caused by their inability to pay off debt and secure additional financing.  *See id.* at 934.

Considering the size of the damage awards in the above cases, all involving property loss, it is likely that Plaintiffs stood to recover additional damages close to the value of the car, if not more, had they been successful in proving that Defendant arbitrarily and capriciously refused to pay their claim.

In addition to the cost of the car and damages, Plaintiffs asked for statutory penalties pursuant to La. R.S. 22:1220 (La. R.S. 22:1973) and La. R.S. 22:1892.  Under La. R.S. 22:1973, Plaintiffs could have been awarded penalties "not to exceed two times the damages sustained or five thousand dollars, whichever is greater."  Under La. R.S. 22:1892, Plaintiffs could have been

awarded fifty percent of the amount due under the contract, or $1,000, whichever is greater plus attorney fees.  If Plaintiffs had prevailed on the claims put forth in their complaint, they would have been able to recover penalties under whichever statute provided a greater penalty.  *See Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 1/19/00).  Furthermore, they would have been entitled to attorney fees.  *Id.* at 174 (explaining that a court can award penalties under 22:1220 and still award attorney fees under 22:658).

The exact amount of damages is unknown, but to determine the potential for jurisdictional purposes one must take that unknown amount and multiply it by two to get the amount of penalties that Plaintiff would have been awarded under 22:1973.  For instance, if Plaintiffs had been awarded $15,000 in damages for inconvenience, monetary loss, and mental stress, they would have been entitled to an additional $30,000 in statutory penalties for Defendant's arbitrary and capricious denial.  This is on top of the approximately $20,000 that they would have received as compensation for the car.  And in additional to all of this, Plaintiffs would have been entitled to attorney fees under La. R.S. 22:1892.

Considering the value of the stolen car as well as the potential magnitude of damages, statutory penalties and attorney fees, it is clear that the amount in controversy at the time of removal exceeded $75,000.  Therefore, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The Court now turns to an analysis of the evidence.

(2)

Plaintiffs have the initial burden of proving the existence of a policy, that coverage exists under this policy, and that a loss was occasioned by an event covered under the policy.  *See Rafflee v. Hurricane Sports, Inc.*, 20 So. 3d 1202 (La. App. 3 Cir. 10/7/09), *Ho v. State Farm*

10

*Mut. Auto Ins. Co.*, 862 So. 2d 1278, 1281 (La. App. 3 Cir. 12/31/03).  Plaintiffs have met the burden of proving the existence of a policy and that the policy covered theft of the covered vehicle.

(3)

Generally, the mere assertion of a covered loss is insufficient to meet plaintiff's burden. *See Ho*, 862 So. 2d at 1281.  Merely showing that a disappearance occurred is not sufficient to prove theft.  *Id.*  However, in some circumstances, "such as where the vehicle is never recovered and unavailable for examination, this showing may be sufficient…"  *Id.* at 1282,

(4)

Plaintiffs in this case satisfied their burden of proving that a loss occurred and that this loss was covered by the insurance policy.  Plaintiff Diana Dominick testified that she parked the car in the French Quarter on October 14, 2010 and that when she returned to the car, it was gone. She reported the theft to the police and called the impound lots.  The car was never found again. This evidence is sufficient to establish that a covered loss–a theft—occurred.

(5)

Once the plaintiff satisfies his initial burden, the burden shifts to the insurer to prove "the applicability of an exclusionary clause within the policy." *Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 784 So. 2d 637 (La. 4/3/01).

The State Farm insurance policy's provision regarding theft "by or at the direction of an insured" is an exclusion.  As such, Defendant bears the burden of proving that Plaintiffs were involved in the theft of their own car.  Insurance companies may often rely on circumstantial

11

evidence to prove an insured's involvement in a loss, however the circumstantial evidence in this case was not sufficient to satisfy Defendant's burden.

While Defendant did present evidence indicating that a duplicate key was made, they presented no evidence that the duplicate was used to drive the car away from its parking spot on October 14, 2010.  Furthermore, Defendant did not rule out the possibility that the car was towed from its spot on that day.  Similarly, Defendant proved that Plaintiffs had some debts during the months preceding the alleged theft.  Defendant, however, failed to prove that these debts served as an adequate motive for the Plaintiffs to orchestrate the theft of their own car.  The Plaintiffs assets far exceed their debts.  These could have been sold or mortgaged.  Defendant did not explain why the Plaintiffs would not have first tried to sell the car or have taken a mortgage out on their house before resorting to this elaborate, criminal plan.

(6)

The State Farm policy excludes coverage if the insured makes "false statements with the intent to conceal or misrepresent any material fact or circumstance in connecting with any claim under [the] policy."  Defendant did prove that on several occasions Joseph and Diana Dominick made inconsistent statements to the State Farm investigators regarding their claim history and financial situation.  However, Plaintiffs' testimony at trial indicates that these inconsistencies were caused by a lack of sophistication, education and understanding rather than an intent to defraud.  Defendant failed to prove that Plaintiffs acted with an intent to conceal or misrepresent material facts in connection with their insurance claim.  Thus the Defendant failed to meet its burden of proving the applicability of the policy's exclusionary clause.

(7)

Since the Court previously dismissed the Plaintiffs' penalty claim, a breach of contract claim is the only claim left in this case.  Civil Code Article 1998 limits recovery of non-pecuniary losses for breach of contract.  Such relief is barred unless (1) the primary objective of the contract is non-pecuniary, or (2) the defendant's conduct was intended to aggrieve the plaintiff.  Neither of these conditions applies.  Furthermore, at trial Plaintiff failed to produce any evidence of any monetary loss resulting from Defendant's failure to pay the claim.  There is no evidence to support a claim for inconvenience, monetary loss, or mental stress resulting from loss of use.

(8)

The credible evidence supports the conclusion that the car was slightly more valuable than an average 2002 Ford Thunderbird because of the low mileage that was on the car when it was stolen.

## IV.  SUMMARY

On the basis of the above Findings of Facts and Conclusions of Law, the Court finds that the Plaintiffs sustained a loss to their 2002 Thunderbird that was covered by State Farm insurance policy.  Plaintiffs are therefore entitled to recover the Actual Cash Value of that loss, $18,275 (or $19,191 with tax and fees).  Plaintiffs did not prove that they suffered any additional damages from Defendant's failure to pay.  Therefore, recovery is limited to the value of the vehicle plus interest from judicial demand plus court costs.

New Orleans, Louisiana this 11th day of September, 2013.

_____

UNITED STATES DISTRICT JUDGE